

**SIGNED this 10 day of January, 2012.**

_____
**James P. Smith
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 13 |
| | : | |
| ALLISON N. PRACHT, | : | |
| | : | |
| Debtor | : | Case No.  11-30594 JPS |
| | : | |

BEFORE

James P. Smith
United States Bankruptcy Judge

APPEARANCE:

For Debtor:            Christopher J. Liken
                       Harris & Liken, LLP
                       P.O. Box 1586
                       Athens, Georgia 30603

For Chapter 13 Trustee:   Tony D. Coy
                          P.O. Box 954
                          Macon. Georgia 31202

**MEMORANDUM OPINION**

This case presents the question of whether a Chapter 13 plan can be confirmed over the Chapter 13 trustee's objection where the plan separately classifies a non-dischargeable student loan debt and proposes to pay that debt more than the other general unsecured creditors. As applicable to the issues raised, the debtor and trustee have stipulated to the following facts:

1. The debtor is a divorced school teacher with no dependents.

2. For purposes of 11 U.S.C. § 1325(b)(4), the debtor is an over-median income debtor with a negotiated applicable commitment period of 57 months. For purposes of 11 U.S.C. § 1325(b)(1) and (2), the debtor's negotiated projected disposable income is $872.12.[1]

3. The U.S. Department of Education has filed a claim for $115,934.98. The debtor acknowledges that this is a non-dischargeable student loan debt under 11 U.S.C. § 523(a)(8).

4. The total of all other general unsecured claims (herein "other unsecured claims") is approximately $102,000.

5. The student loan debt came due prior to debtor filing her Chapter 13 case. The debtor has exhausted all of the available deferments and forebearances with respect to the payment of this debt.

6. Because the debtor is a special education teacher, she is eligible for the so-

---

[1]The debtor and trustee agreed on the applicable commitment period and the projected disposal income amount for reasons not germane to the issues presented in this case.

called "Public Service Loan Forgiveness" program. Under this program, if she makes 120 consecutive monthly payments of a negotiated amount without default, the balance of the debt remaining thereafter (approximately $50,000) will be forgiven. The monthly payment which she has negotiated with the Department of Education is $532.12.

7. The debtor has proposed a plan that separately classifies and pays the student loan debt at the rate of $532.12 per month. The balance of her projected disposable income is to be paid pro-rata to the creditors holding the other unsecured claims.

8. Under the plan as proposed, the creditors holding the other unsecured claims will receive a distribution of approximately 15 percent of their claims. However, if the student loan debt was lumped in with the other unsecured claims and all of the debtor's projected disposable income was paid pro-rata to the entire group, the other unsecured claims would receive an additional distribution of approximately $5,000, resulting in a distribution of approximately 20 percent.

9. The Chapter 13 trustee has filed the only objection to confirmation of the plan.

10. Pursuant to 11 U.S.C. § 707(b), the debtor does not qualify for a Chapter 7 case.

The case was presented for oral argument on November 21, 2011. At the request of the Court, counsel for the parties appeared again on December 14, 2011, to respond to questions which the Court had regarding the facts and to clarify their legal positions. At that

hearing, counsel for the parties agreed that the specific issues posed were:

    1.    May a plan allocate a portion of the debtor's projected disposable income to payment of a separately classified non-dischargeable student loan debt, with the balance of the debtor's projected disposable income going to the other unsecured claims without violating 11 U.S.C. § 1325(b)(1) where the plan does not propose to pay the other unsecured claims in full?

    2.    If the answer to the first question is yes, then does such a plan discriminate unfairly with respect to the other unsecured claims in favor of the student loan debt in violation of 11 U.S.C. § 1322(b)(1)?  Resolution of this issue requires the Court to also address the relationship between sections 1322(b)(1) and (5).

1.    <u>Does the plan comply with 11 U.S.C. § 1325(b)(1)?</u>

11 U.S.C. § 1325(b)(1) provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan -
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

As stated above, the plan at issue does not propose to pay the other unsecured claims in full. Accordingly, this plan may not be approved unless it complies with the provisions of 11 U.S.C. § 1325(b)(1)(B).

This issue is straight forward and easily resolved. All that section 1325(b)(1)(B) requires is that all of the debtor's projected disposable income be paid "to unsecured creditors under the plan". In this case, the student loan debt is an unsecured claim. All of the debtor's projected disposable income is being paid to the holders of the student loan debt or the other unsecured claims. As held by the court in <u>In re Knight</u>, 370 B.R. 429 (Bankr. N.D. Ga. 2007), section 1325(b)(1)(B) does not address how the debtor's projected disposable income is to be allocated. Allocation is addressed by other Code sections, such as sections 1322(b)(1) and (b)(5). As long as all of the debtor's projected disposable income is being paid to creditors with unsecured claims, as is the case here, the plan complies with section 1325(b)(1)(B).

2.      <u>Does the plan discriminate unfairly with respect to the other unsecured claims?</u>

Over the life of the plan, the U.S. Department of Education will receive a total of $30,330.84. However, the creditors of the other unsecured claims will receive only $15,660. The trustee contends that this disparity in treatment violates 11 U.S.C. § 1322(b)(1).

Section 1322(b)(1) provides that:

> . . . the plan may—
> (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated. . . .

The debtor has the burden of showing that the proposed classification does not discriminate

5

unfairly. In re Kalfayan, 415 B.R. 907, 909 (Bankr. S.D. Fla. 2009). Further, as that court recognized, "Most courts have concluded that discrimination based solely on nondischargeability is unfair." Id. at 910. This court agrees with that conclusion.

As an initial matter, some courts have held that section 1322(b)(1) is "trumped" by section 1322(b)(5), which provides that a plan may:

> . . . notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

In this case, the final payment on the student loan debt will be due after the conclusion of the plan. Accordingly, this provision is applicable.

In the case of In re Webb, 370 B.R. 418 (Bankr. N.D. Ga. 2007), Judge Margaret Murphy explained:

> Whether curing a default and continuing to make direct contract payments on a long term debt should be subject to unfair discrimination analysis is unsettled. See In re Brown, 162 B.R. 506, Appendix A (N.D. Ill. 1993). The minority view excepts long-term loan obligations (i.e. for which the payment period extends beyond the life of the plan) from the unfair discrimination analysis under 1322(b)(1). See In re Jackson, Case No. 05-85212, P. 4 (Bankr. N.D. Ga. 2006) (J. Mullins), citing In re Williams 253 B.R. 220 (Bankr. W.D. Tenn. 2000); In re Benner, 156 B.R. 631 (Bankr. D. Minn. 1993). Courts that have accepted the minority position permit the debtor's plan to cure defaults and to maintain contract payments on long-term unsecured debt even when other unsecured debt will receive less than full payment.
>
> The majority position requires plans that provide full payment of student loan obligations under § 1322(b)(5) to undergo unfair discrimination analysis. In re Simmons, 288 B.R. 737, 744 (Bankr. N.D. Tex. 2003).

Id. at 422-23.

As the court in In re Harding, 423 B.R. 568 (Bankr. S.D. Fla. 2010) explained:

6

> But § 1322(b)(5) cannot be read in isolation. See, e.g. Carpenters Health & Welfare Trust Funds for California v. Robertson (In re Rufener Constr.), 53 F.3d 1064, 1067 (9th Cir. 1995) ("When we look to the plain language of a statute in order to interpret its meaning, we do more than view words or subsections in isolation. We derive meaning from context, and this requires reading the relevant statutory provision as a whole.") (citing Smith v. United States, 508 U.S. 223, 233, 113 S. Ct. 2050, 124 L.Ed. 2d. 138 (1993) ("Statutory construction . . . is a holistic endeavor.")). . .
>
> Interestingly, § 1322(b)(5) explicitly trumps (b)(2) by using the language "notwithstanding paragraph (2)." Congress presumably could have also explicitly trumped (b)(1) by using the language "not withstanding paragraph (1) & (2)" — but Congress did not do so.

Id. at 571-72.

This Court finds the reasoning in In re Harding sound. Accordingly, this Court concludes that section 1322(b)(5) does not "trump" (b)(1). Rather, payments on a long-term debt under (b)(5) will not be permissible if the payments discriminate unfairly against the other unsecured claims in violation of (b)(1).

Turning now to the discrimination analysis, the Bankruptcy Code does not define the term "discriminate unfairly". As explained by the court in Bentley v. Boyajian (In re Bentley), 266 B.R. 229 (1st. Cir. BAP 2001):

> Because § 1322(b)(1) distinguishes between discrimination that is unfair and discrimination that is not, we understand "discriminate" to have no pejorative connotation here. "To discriminate," in its broadest sense, is to make a distinction or to note a difference between two things. Derivatively, it is to treat two things differently on account of a distinction between them. Accordingly, in § 1322(b)(1), to discriminate is simply to treat two classes differently on the basis of a difference between them; the difference in treatment need not be unfair, wrongful, or even adverse to a class in order to constitute discrimination within the meaning of this statute. The treatment need only be different.
>
> Section 1322(b)(1) prohibits only such discrimination as is unfair to any class of unsecured claims and, conversely, sanctions such differences in treatment as are fair. The operative term here is fair. Like good, just, and right,

7

> however, "fair" in the abstract is too indefinite, and therefore prohibitively difficult, to define and apply. The world is full of competing theories and perspectives from which to determine what is fair, and the word "fair", standing alone, does not specify which of them to apply. This problem has left the courts casting about for a definite standard of its meaning in this statute.

Id. at 237.

In the case of In re Orawsky, 387 B.R. 128 (Bankr. E.D. Penn. 2008), the court undertook an exhaustive analysis of the various tests which have been developed by the courts to determine whether a plan discriminates unfairly. As the court explained:

> Hence, courts have been left to struggle to formulate a feasible, practical, reasoned approach in applying the "unfair" discrimination restriction of § 1322(b)(1). As a result of these efforts, an array of different tests have been articulated, critiqued, rejected and re-formulated over the years. One early court, after observing that decisions on the issue on what constituted "unfair" discrimination ran the "gamut from everything goes to nothing is allowed," was led to conclude that "somewhere between total whim and an Act of God lies the answer to what justification is needed to hew out a particular class of unsecured creditors and distinguish it from other unsecured creditors." In re Hill, 4 B.R. 694, 697-698 (Bankr. D. Kan. 1980).
>
> The majority of courts faced with answering the question of when discrimination is "unfair" apply some form of multi-factored test. The Eighth Circuit Court of Appeals articulated the most widely-applied test in a case involving preferential treatment of child support payments. In re Leser, 939 F.2d at 672. The Ninth Circuit Bankruptcy Appellate Panel (BAP) utilizes an identically-factored test for scrutinizing "unfair" discrimination. See In re Wolff, 22 B.R. 510 ( 9th Cir. BAP 1982). Under the Leser/Wolff test, a court judges the fairness of proposed discrimination by looking at whether:
>
>> 1. the discrimination has a reasonable basis;
>> 2. the debtor can carry out a plan without the discrimination;
>> 3. the discrimination is proposed in good faith; and
>> 4. the degree of discrimination is directly related to the basis or rationale for the discrimination.
>
> Leser, 939 F.2d at 672 (citations omitted); Wolff, 22 B.R. at 512.
>
> While the Leser/Wolff test has been widely applied, so too has it been

8

>   criticized frequently for its reliance on undefined notions of what is
>   "reasonable", "legitimate" and "in good faith.". . .
>
>   A few courts have responded to the perceived flaws in the Leser/Wolff test by
>   trying to improve the test by incorporating additional factors. For example, in
>   In re Husted, 142 B.R. 72 (Bankr. W. D. N.Y. 1992), in determining whether a
>   debtor could specifically classify past-due child support, the bankruptcy court
>   developed a five-factor test. Similarly, dissatisfied with the workings of the
>   Leser-Wolff test, the bankruptcy court in In re Bird, 1994 WL 738644 (Bankr.
>   D. Idaho Dec. 23, 1994) articulated an eight-factor test.
>
>   Of course, the inevitable consequence of any multi-factored test, as
>   highlighted above in the criticisms of the Leser/Wolff test, is that it devolves
>   into a "totality of the circumstances" or "case-by-case" analysis, thereby
>   running the risk of being depicted as an ad hoc, potentially purely subjective
>   determination. See, e.g., In re Groves, 39 F.3d 212, 214 (8th Cir. 1994)
>   (noting that the application of the "discriminate unfairly" standard may
>   "involve little more than exercise of the bankruptcy court's broad discretion");
>   cf. In re Crawford, 324 F.3d 539 (7th Cir. 2003) (referring to exercise of
>   bankruptcy court's discretion in nonpejorative terms).

Id. at 141-42. Specifically, the court in In re Crawford stated:

>   We haven't been able to think of a good test ourselves [under § 1322(b)(1)].
>   We conclude, at least provisionally, that this is one of those areas of the law in
>   which it is not possible to do better than to instruct the first-line decision
>   maker, the bankruptcy judge, to seek a result that is reasonable in light of the
>   purposes of the relevant law, which in this case is Chapter 13 of the
>   Bankruptcy Code.

324 F.3d at 542.

The Eleventh Circuit has not addressed the standards to be applied in determining whether a plan "discriminates unfairly". Further, this Court can find no compelling reason why it should accept or reject any one of the many tests which have been developed by other courts. All have their strengths and weaknesses. None of these tests are statutorily prescribed and, as recognized by the court in In re Orawsky, all of them result in a highly subjective analysis. In fact, one could argue that the framing of the factors or questions to be

9

considered in each of these tests seems to drive the result obtained.

Nevertheless, this Court must choose some basis on which to determine whether the plan discriminates unfairly. This Court concludes that this determination must be made in light of the purposes of the Bankruptcy Code. Accordingly, this Court adopts the reasoning of the court in In re Harding, supra, where the court held:

> 'The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor.' Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367, 127 S. Ct. 1105, 16 L.Ed.2d 956 (2007) (quoting Grogan v. Garner, 498 U.S. 279, 286-87, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991)). Congress and the judiciary are constantly striving to achieve a wise balance between this fresh start policy, which is paramount, and the obvious primary competing aim of the Bankruptcy Code. As stated by Bankruptcy Judge Black, 'Any exercise of judicial discretion under the Bankruptcy Code should be informed by the two fundamental concepts of a fresh start for debtors and fairness to creditors.' In re Forte, 341 B.R. 859, 869 (Bankr. N.D. Ill. 2005). While Congress has chosen to treat certain creditors differently than others for a variety of reasons, §§ 507, 523(a)(8), and 1322(b) combine with the rest of the Bankruptcy Code to require a fair balancing of:
> (1) the Debtor's fresh start;
> (2) the clear legislative objective of student loan repayment; and
> (3) fair treatment of creditors as a whole.

423 B.R. at 575.

In this case, allowing the debtor to separately classify and pay the student loan debt more than the other unsecured claims will allow the debtor to participate in the Public Service Loan Forgiveness program and thereby give her the chance to write off approximately $50,000 of the debt which would otherwise remain nondischargeable. Accordingly, allowing her to discriminate in favor of the student loan debt advances the goal of the debtor's fresh start. This also obviously advances the legislative objective of payment student loan debts. On the other hand, the cost of this discrimination to the creditors holding the other unsecured claims is the difference between a 15 percent and 20 percent distribution,

or a total of only approximately $5,000.  Perhaps this modest difference is the reason no other unsecured creditor objected to confirmation of the debtor's plan.  In any event, in light of this small cost to the creditors holding the other unsecured claims, allowing the debtor to proceed as proposed is a fair balance of the goals of the Bankruptcy Code.  Accordingly, this Court finds that the debtor's proposed plan does not unfairly discriminate in violation of 11 U.S.C. § 1322(b)(1).

For the reasons set forth herein, the Court will enter an order confirming the debtor's plan and overruling the trustee's objection.

**END OF DOCUMENT**